STATE, RESPONDENT, *v.* BEESSKOVE, APPELLANT.

(No. 2,254.)

(Submitted February 26, 1906. Decided March 19, 1906.)

*Criminal Law—Murder—Appeal—Information—New Trial—Jury—Evidence—Instructions.*

Criminal Law—Motion in Arrest of Judgment—Appeal.
    1. An appeal from an order overruling a motion in arrest of judgment does not lie on behalf of defendant. (Penal Code, sec. 2272.)
Same—Denial of Motion in Arrest—How Reviewable.
    2. An order overruling a motion in arrest of judgment is an intermediate order, reviewable on appeal from the judgment. (Penal Code, sec. 2321.)
Same—Information—Sufficiency—Venue—Motion in Arrest.
    3. The sufficiency of an information, with reference to the allegation of the venue of the crime, may be attacked for the first time by motion in arrest of judgment.
Same—Information—Allegation as to Time and Place.
    4. Allegations of time and place of the commission of the crime charged in an information are of the substance of the charge and must be so alleged, in ordinary and concise language, as to enable a person of common understanding to know what is intended by the charge.
Same—Information—Allegation as to Place of Offense.
    5. In an information for murder the only mention of the county in which the crime was committed appeared in the caption describing the court in which, and the officer by whom, the charge was preferred, In the charging part of the document the word "county" was not used at all, and the only reference words found there were in the expression "then and there," the first of which referred to a preceding date alleged as the date of the crime, while the latter indicated some place, not described, where the defendant then was. *Held,* that, in the absence of an expression such as "in the county aforesaid" or "said county," thus referring to the caption, the information did not allege the county in which the offense had been committed, and that the district court committed error in overruling a motion in arrest of judgment interposed by defendant.

Same—New Trial—Misconduct of Jury—Affidavits of Jurors.

6. *Held,* that affidavits of two jurors, filed in aid of a motion for new trial by defendant in a prosecution for murder, in which both stated that they had misunderstood the instructions of the court (which explicitly and clearly charged the jury that they could find the accused guilty of any grade of unlawful homicide or acquit him), in that from a reading of them they were under the impression that the jury was required to either find the defendant guilty of murder in the first degree or acquit him, and that, being unwilling to acquit, they voted for murder in the first degree rather than to declare him innocent, did not, under Penal Code, section 2192, show such misconduct on the part of the jury as to entitle defendant to a new trial.

Same—Witnesses—Cross-examination—Undue Restriction.

7. Where a witness, on a trial for homicide, testified that he and accused had had trouble, but denied that he had ever tried to frighten him, it was error to exclude a question on cross-examination as to whether he had not told any of the witnesses that he had done so, though the question did not call the witness' attention to the time and place of the alleged statements so as to lay a foundation for impeaching evidence under Code of Civil Procedure, section 3380.

Same—Trial—Instructions—Witnesses.

8. In a prosecution for murder, it was error for the district court to refuse to charge the jury that in determining the weight to be given to the testimony of witnesses, the jury had a right to consider their appearance on the stand, their manner of testifying, their apparent candor or lack of it, their apparent fairness and means of knowledge, together with all the facts and circumstances in the evidence; and such error was not cured by submitting, in place of the requested instruction, the language of section 3123 of the Code of Civil Procedure, supplemented by the words, that they were at liberty to disregard the testimony of any witness who had willfully and deliberately testified falsely to any material matter, unless corroborated.

*Appeal from District Court, Missoula County; F. C. Webster, Judge.*

K. F. W. BEESSKOVE was convicted of murder of the first degree. From the judgment of conviction and from an order denying him a new trial, he appeals. Reversed.

*Mr. A. J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Respondent.

The district court is a court of general jurisdiction and has jurisdiction in a homicide case, and the information contains all the allegations necessary to charge a deliberate, premeditated killing of a human being with malice aforethought; hence the court had jurisdiction of the subject matter, and the facts stated are sufficient to show affirmatively that a public offense had been committed. The defendant, by failing to demur and

by making no objection to the introduction of testimony by which the venue was clearly established, waived his right to object to these alleged defects in the information. (Penal Code, sec. 1930; Cal. Penal Code, 1886, sec. 1185, and notations; *Nichols* v. *People*, 40 Ill. 395, in connection with Ill. Rev. Stats. 1874, sec. 411, p. 408; and see *People* v. *Mead*, 145 Cal. 500, 78 Pac. 1047.)   The caption and upper marginal title are parts of the information. (Penal Code, sec. 1833; *Anderson* v. *State*, 104 Ind. 467, 4 N. E. 63, 5 N. E. 711; *State* v. *S. A. L.*, 77 Wis. 467, 46 N. W. 498; *State* v. *Shull*, 40 Tenn. 42; *State* v. *Delay*, 30 Mo. App. 357; *Sanderlin* v. *State*, 21 Tenn. 315; *State* v. *Reid*, 20 Iowa, 413.)

The real objection urged to this information is that it does not allege that this offense was committed in Missoula county, Montana. We find that this county is named three times: once in the caption, once in the "upper margin," and once in the body of the information. We also find that the offense was alleged to have been committed on the twenty-second day of June, 1905, and that in the charging part of the information the phrase *"then and there"* occurs six times. The words *"then and there,"* as used in the information, are words of reference, and refer back to the date and place last specified. The place last specified in this information is Missoula county, Montana; the date last named is June 22, 1905. (*Wright* v. *Commonwealth*, 82 Va. 183; *State* v. *Shull*, 40 Tenn. 42; *Anderson* v. *State*, 104 Ind. 467, 4 N. E. 63, 5 N. E. 711; *State* v. *Reid*, 20 Iowa, 417; *Commonwealth* v. *Butterick*, 100 Mass. 12, 97 Am. Dec. 65; *State* v. *Williamson*, 81 N. C. 540; *State* v. *Salts*, 77 Iowa, 193, 39 N. W. 167. See, also, *Commonwealth* v. *Williams*, 149 Pa. St. 54, 24 Atl. 158; *Foster* v. *State*, 19 Ohio St. 415; 10 Ency. of Pl. & Pr. 524; *Dean* v. *State*, 8 Tenn. (Cooper's ed.), 128.)   The caption of a case consists of: (a) The title and designation of the court; (b) The title of the cause. The title of the cause contains the names of the parties litigant; the title of the court locates the action. Under the provisions of section 1833 of the Penal Code, the title of the court, in Montana, is made a necessary part of the body of the information and

the facts therein stated need not afterward be repeated, but may be referred to by appropriate words, such as "then and there" or "aforesaid," etc. Section 2600 of the°Penal Code is a curative statute intended to cure just such defects in an information as that alleged by the appellant in this case.

Again, the court and the defendant were bound° to take notice of the fact that William L. Murphy was the county attorney of Missoula county, and was not the county attorney of any other county. It is very apparent from all these facts and law above stated, that this alleged "defect or imperfection in matter of form" did "not tend to the prejudice of a substantial right of the defendant upon its merits." (Penal Code, sec. 1842.)

The jury is an entity, and if one juror is disqualified, or is guilty of misconduct, it vitiates the jury as a whole. (*State v. Mott,* 29 Mont. 292, 74 Pac. 728.) If the fact that one juror testifying that he did not understand the instructions is sufficient to disqualify him or make him guilty of misconduct, this would vitiate the entire jury and nullify the verdict. The effect of this would be to place all verdicts at the mercy of any single juror and make it possible for any juror to set aside a judgment of conviction at any time he reached the conclusion, either with or without design, that he did not understand the instructions. If the sworn secrecy of the jury-room and the almost universal exclusion of the affidavits of jurors incriminating themselves or their fellows has any application, it should apply to this case. (28 Am. & Eng. Ency. of Law, 1008; *Mattox* v. *United States,* 146 U. S. 140, 13 Sup. Ct. 50, 36 L. Ed. 917.) This principle is mentioned but not discussed in *State* v. *Brooks,* 23 Mont. 146, 57 Pac. 1038. It is also adverted to in *Fitzgerald* v. *Clark,* 17 Mont. 100, 52 Am. St. Rep. 665, 42 Pac. 273, 30 L. R. A. 903; *Gordon* v. *Trevarthan,* 13 Mont. 387, 40 Am. St. Rep. 452 and note, 34 Pac. 185.

*Mr. Harry H. Parsons,* and *Mr. S. G. Murray,* for Appellant.

The caption and commencement are technically not a part of the information, and we cannot legally couple them with and tie them to the body of the information in order that we may find, upon the *whole* instrument, a possible intendment to charge and lay the venue. At the common law, in the federal courts and in many states the rule is uniform that each has its special function to perform separate and apart from the other. This is shown by the fact that at common law the prohibition against any amendment of the indictment did not apply to the caption or commencement, and this for the very plain reason that they were not a part of it. In the federal courts, where amendment of an indictment is absolutely prohibited because violating the Fifth Amendment to the Constitution, the caption or commencement may be amended, and indeed, almost done away with, if the body of the indictment contains proper averments. In all courts the caption and commencement "are exempt from that rigor which obtains even now in matters of substance against amendments only, because they are so wholly outside and apart from the indictment itself," they not being a part of it, but only an outside record relating to it. (*United States* v. *Howard,* 132 Fed. 325.) There are cases where courts hold that any defect or insufficiency in the caption or commencement may be aided by any statement found on the face of the indictment, "but they give no support to the converse of the proposition." (*United States* v. *Howard,* 132 Fed. 325; *McBean* v. *State,* 3 Heisk. 20.) Or the caption or preamble may be looked into at times to aid a defective description of the grand jury. (*State* v. *Buralli,* 27 Nev. 41, 71 Pac. 532.) Or to find in what court the information was filed. (*Dean* v. *State,* Mart. & Y. 127; *United States* v. *Howard,* 132 Fed. 325.) Or one count may refer to another to avoid unnecessary repetition, and the effect of such reference is to incorporate the matter into the incomplete count. (*Crane* v. *United States,* 162 U. S. 625, 16 Sup. Ct. 952, 40 L. Ed. 1097.)

Neither the record, nor the evidence, is subject to inspection to determine whether or not an information is sufficient. The sufficiency or insufficiency is determined always by the instrument itself. (*State* v. *Tully,* 31 Mont. 365, 78 Pac. 760; *People* v.· *McConnell,* 82 Cal. 620, 23 Pac. 40; *Brown* v. *Massachusetts,* 144 U. S. 573, 12 Sup. Ct. 757, 36 L. Ed. 546.)

So much for the caption and preamble; by themselves they stand for and mean nothing more. Do they, *per se,* charge defendant with a crime? They say: "With the crime of murder committed as follows." Adding the phrase "crime of murder" is no part of the offense, nor does it constitute or form any part of the charge, although required to be inserted by section 1833 of the Penal Code. (*State* v. *Anderson,* 3 Nev. 254; *State* v. *Davis,* 41 Iowa, 311; *State* v. *Wyatt,* 76 Iowa, 328, 41 N. W. 31; *State* v. *Dehart,* 109 La. 570, 33 South. 605; *State* v. *Culbreath,* 71 Ark. 80, 71 S. W. 254; *Brady* v. *Territory,* 7 Ariz. 12, .60 Pac. 698.) "The rules of criminal pleading forbid that resort should be had to inference, however reasonable, to interpret the language of a formal charge, where certainty is demanded by statute." (*State* v. *Eddy* (Or.), 81 Pac. 941; *Moline* v. *State,* 67 Neb. 164, 93 N. W. 228; *State* v. *Ashpole,* 127 Iowa, 680, 104 N. W. 281.)

That time and place must be laid in the body of the indictment or information is the law in the great majority of the states, while under the common law there is no important exception. As to the necessity under the common law, see the following: 1 Chitty on Criminal Law, 132, 196, 200; 4 Durn. & E. (4 Term Rep.) 490; 5 Durn. & E. (5 Term Rep.) 162; Archibald on Criminal Pleading, 12; Yel. 94; Cro. Eliz. 97, 2 Hawkins' Pleas of the Crown, c. 25, No. 77; 2 Hale's Pleas of the Crown, 180; 4 Com. Dig., "Indictment," 670; 4 Maule & S. 215; *Commonwealth* v. *Springfield,* 7 Mass. 9, 13. The rule is the same in all federal jurisdictions. (*Ball* v. *United States,* 140 U. S. 118, 11 Sup. Ct. 761, 35 L. Ed. 377; *United States* v. *Marx,* 122 Fed. 964; *United States* v. *Howard,* 132 Fed. 325.)

The rule is practically unanimous that venue must be laid in the indictment or information in all the states in this country, except where some special statute provides that the venue laid in the caption, etc., shall be taken as that where the crime is alleged to have been committed, as in Alabama, Arkansas, Louisiana, Iowa, Maryland, Michigan, Missouri, Ohio, Tennessee, and in later years, Texas, etc. The following cases are in point: *People* v. *O'Neill,* 48 Cal. 257; *People* v. *Craig,* 59 Cal. 370; *People* v. *Wong Wang,* 92 Cal. 281, 28 Pac. 270; *People* v. *Webber,* 133 Cal. 623, 66 Pac. 38; *Evans* v. *State,* 17 Fla. 192; *Connor* v. *State,* 29 Fla. 455, 30 Am. St. Rep. 126, 10 South. 891; *McKennie* v. *State,* 29 Fla. 565, 30 Am. St. Rep. 140, 10 South. 732; *State* v. *Ellison,* 49 W. Va. 70, 38 S. E. 574; *Earley* v. *Commonwealth,* 93 Va. 765, 24 S. E. 936; *Territory* v. *Freeman,* McCahon, 56, 1 Kan. (2d ed.) 491; *State* v. *Hinkle,* 27 Kan. 308; *McKoy* v. *State,* 22 Neb. 418, 35 N. W. 202; *Guston* v. *People,* 61 Barb. 35; *Geston* v. *People,* 4 Lan. 487; *Crichton* v. *People,* 40 N. Y. (1 Keyes) 341, 1 Abb. App. Dec. 467, 6 Park. Crim. Rep. 363; *People* v. *Horton,* 62 Hun, 610, 17 N. Y. Supp. 1; *State* v. *Beebe,* 83 Ind. 171; *Kennedy* v. *Commonwealth,* 6 Ky. (3 Bibb) 490; *McBride* v. *State,* 29 Tenn. (10 Humph.) 615; *Field* v. *State,* 34 Tex. 39; *Searcy* v. *State,* 4 Tex. 450; *State* v. *Slack,* 30 Tex. 354; *State* v. *Johnson,* 32 Tex. 96; *Williams* v. *State,* 38 Tex. Cr. App. 377, 43 S. W. 115; *Territory* v. *Doe,* 1 Ariz. 507, 25 Pac. 472; *State* v. *Williams,* 4 Ind. 234, 58 Am. Dec. 627; *Nicholson* v. *State,* 18 Ala. 529, 54 Am. Dec. 168; *Ball* v. *United States,* 140 U. S. 118, 11 Sup. Ct. 761, 35 L. Ed. 377; *United States* v. *Marx,* 122 Fed. 964; *United States* v. *Howard,* 132 Fed. 325; *contra, State* v. *S. A. L.,* 77 Wis. 467, 46 N. W. 498.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The defendant was, upon his plea of not guilty to an information charging him with murder, found guilty of murder in the first degree, and by the judgment of the court was condemned to death. He has appealed from the judgment and from an

order denying him a new trial. He has also attempted to appeal from the order of the court overruling his motion in arrest of judgment. The integrity of the judgment is questioned upon the grounds: That the court erred in overruling defendant's motion in arrest of judgment, in the admission and exclusion of evidence, in giving and refusing instructions to the jury; that the jury were guilty of misconduct; and that the verdict is contrary to the law and the evidence.

1. Touching the attempted appeal from the order overruling the motion in arrest of judgment, it is sufficient to say that no appeal lies from such an order on behalf of defendant. (Penal Code, sec. 2272.) It is an intermediate order which may be reviewed on appeal from the judgment, and not otherwise. (Penal Code, sec. 2321.)

2. The principal question submitted for decision arises out of the contention of counsel for defendant that the information does not contain sufficient substantial allegations to give the court jurisdiction of the offense of which the defendant was convicted. It is said that no venue is laid in the information, and for that reason it was insufficient to put the defendant upon his defense.

The information, omitting formal parts, is as follows: "In the district court of the fourth judicial district, in and for Missoula county, Montana, on this 6th day of September, A. D. 1905, in the name and on behalf and by the authority of the state of Montana, K. F. W. Beesskove is accused by the county attorney of Missoula county, Montana, by this information of the crime of murder in the first degree, committed as follows: That said K. F. W. Beesskove did, on or about the 22d day of June, A. D. 1905, willfully, deliberately, feloniously, premeditatedly and of his malice aforethought, make an assault in and upon one William Burrig, and a certain gun then and there loaded with gun-powder and leaden ball, and by him the said K. F. W. Beesskove then and there had and held, he, the said K. F. W. Beesskove, did then and there feloniously, willfully, deliberately, premeditatedly and of his malice aforethought,

shoot off and discharge at, upon and against the said William Burrig, with intent then and there to kill and murder the said William Burrig, and with the leaden balls out of the said gun so shot off and discharged, he, the said K. F. W. Beesskove, did then and there feloniously, willfully, deliberately, premeditatedly and of his malice aforethought strike, penetrate and wound the said William Burrig, thereby inflicting in and upon the body of said William Burrig a mortal wound, of which the said mortal wound the said William Burrig did then and there die. All of which is contrary to the form, force and effect of the statute in such case made and provided, and against the peace and dignity of the state of Montana."

The sufficiency of the information was not challenged by demurrer, nor during the trial by other appropriate method, the question now submitted being first presented in the case by motion in arrest of judgment. This course saved the adverse ruling for review by this court, however, if under the law the allegation of venue is jurisdictional, and if, further, it cannot be understood from the allegations in the information before us that the crime sought to be charged was committed in Missoula county.

It is well settled upon reason and authority that the circumstances of time and place are of the substance of the charge, though, as to the time, it is sufficient if it is charged that the offense was committed at a time prior to the finding of the indictment or the filing of the information. If the time is an essential ingredient of the offense, the allegation must be precise. This was the rule at common law (4 Blackstone's Commentaries, 307), and has prevailed in the several states of the Union, except where by statute the specific allegation of venue has been declared not essential (*State* v. *Shull,* 40 Tenn. 42; Shannon's Code, Tenn. 1896, sec. 7088), or where the venue stated in the margin or caption is declared sufficient after verdict (*Nicholas* v. *People,* 40 Ill. 395; *State* v. *De Lay,* 30 Mo. App. 357; *State* v. *Simon,* 50 Mo. 370). Mr. Bishop, in his text, declares this to be the rule and cites the cases generally

Mont., Vol. 34—4

in support of it. (3 Bishop's Criminal Procedure, 360, and cases collected in note.) The reason of the rule is that the local jurisdiction of the crime is in the county where it is committed, and the charge must show that fact; furthermore, the defendant is entitled to know the cause of the accusation, so that he may prepare his defense. (Const., Art. III, sec. 16.)

While in this state much of the particularity required at the common law has been dispensed with, and no defect or imperfection in form, which does not prejudice the substantial rights of the defendant, can affect a judgment of conviction (Penal Code, secs. 1842, 2600), still time and place are essential elements and must be so alleged as to enable a person of common understanding to know what is intended by the charge (Penal Code, sec. 1832). This is apparent from the provisions of section 1841 of the Penal Code; for among them is the requirement that the indictment or information shall, with the exception stated, allege that the offense was committed within the jurisdiction of the court and at a time prior to the finding of the indictment or the filing of the information. If it be borne in mind that the common law is in force in this state, except so far as it has been supplanted by our Codes, the conclusion cannot be escaped that the provisions of the Penal Code cited (sections 1832, 1841, 1842), and others germane to the subject, while dispensing with mere matters of form, still require all the substantial allegations necessary under the common-law rule.

Does the information before us meet the requirements of this rule? The only mention of the county is found in the caption in the description of the court in which, and of the officer by whom, the charge is preferred. In the charging part the word "county" is not used at all. The only reference words found there are in the expression "then and there." The first of these evidently refers to the preceding date alleged as the date of the crime, while the other as clearly refers to some place where the defendant then was, the description or designation of which has been omitted. If such an expression as "in

the county aforesaid," or "said county," or the like, had been used, the reference to the caption would have been clear and unequivocal, and any person of common understanding would at once conclude that the pleader meant to say that the offense was committed in Missoula county. As it is, it is only by the merest inference that one who has had experience in such things would reach this conclusion.

Under the statute, the charge must be in ordinary and concise language, and so direct as to enable, not those of learning and experience, to understand it, but the man of ordinary understanding (section 1832, *supra*); for the purpose of the information is not only to state jurisdictional facts, but to inform a man of ordinary understanding what the charge is. We do not think that the information in this case meets these requirements, and therefore conclude that the district court was in error in not granting the motion in arrest of judgment. The result is that the judgment must be reversed, and the cause remanded for a new trial.

3. In aid of the motion for new trial, the defendant filed the affidavits of two jurors, in which both stated in effect that they did not understand the instructions of the court; that, after reading them, they were of the impression that they required the jury to find the defendant guilty either of murder of the first degree or to acquit him; and that, being of the opinion that he should not be acquitted, they voted for the verdict of murder of the first degree, rather than declare him innocent. It is insisted by counsel for defendant that these affidavits show such misconduct on the part of the jury as to entitle the defendant to a new trial on the ground of such misconduct.

While there is some contrariety in the decisions of courts upon the question whether jurors should be heard to impeach their own verdict, we think reason and great weight of authority condemn the practice which permits it. (See 29 Am. & Eng. Ency. of Law, 1008, 1009, with notes.) In any event it should not be tolerated further than the statute permits.

(Penal Code, sec. 2192.)   This section provides for the one
exception, namely, cases where the verdict has been decided by
lot, or by any means other than a fair expression on the part
of all the jurors.   In such case the impeaching affidavit ·may
be made by members of the jury.   (Code Civ. Proc., sec. 1171.)
This express exception, under the rule *"expressio unius est
exclusio alterius,"* it would seem excludes all other exceptions.
Early in the history of the state, the supreme court of Cal-
ifornia declared it to be the rule, founded on necessary policy,
that such affidavits cannot be admitted to impeach a verdict.
(*People* v. *Baker,* 1 Cal. 404.)   This rule was adhered to until
1862, when the legislature provided for the single exception
of the case where the verdict was founded by a resort to chance.
With this modification, the rule now prevails.   (*People* v. *Azoff,*
105 Cal. 632, 39 Pac. 59; *People* v. *Soap,* 127 Cal. 408, 59 Pac.
771.)   The sections of our statute cited were adopted from
that state, and, since the interpretation given to them embodies
the better rule, we approve and adopt it.   Beyond this the
court ought not to receive such evidence, for the obvious rea-
son that, after the verdict has been rendered, members of the
jury would be subject to all sorts of influences intended to
induce them to repent of their decision and lend their aid in
having it revoked.   They might even be tampered with and
corrupted so that the integrity of the verdict would rest, not
upon the integrity and honesty of the jury during their delib-
erations, but upon their susceptibility to such influences after
their duties have been faithfully performed under their oaths.
The case at bar illustrates the danger such practice invites.   The
court explicitly and clearly instructed the jury, in one para-
graph of the charge, that they could find the defendant guilty
of any grade of unlawful homicide or acquit him, according
to their view of the evidence under their oaths.   After reach-
ing a verdict they were brought into court, and through their
foreman returned it, all of them answering to their names
and concurring therein.   Several weeks later two of them
solemnly swore that they understood that the instruction meant

that they should convict the defendant of murder in the first degree or acquit him, leaving them no alternative. Very naturally, the question at once arises: What influenced these men to do this? Why did they keep silent so long? Had they so read the instructions as they swear they did, and forgotten them? Their statements could not be contradicted. The result is that, if their affidavits were to be heard, the court could not do otherwise than grant a new trial on the statements made in them. We think the court properly rejected them as not competent.

4. The court's rulings upon the admission and exclusion of evidence were correct except in one instance. The homicide was the culmination of a dispute as to the ownership of certain wood, the defendant insisting that it was on ground within the boundaries of his homestead claim on the public land. He had controversies with all of his neighbors as to his rights—among others with one Franklin—and seems to have entertained the idea that the deceased with Franklin and others were engaged in a conspiracy to drive him from the settlement. Franklin was called as a witness to prove that the wood was entirely outside of defendant's boundaries. Among other things, he testified in chief that he and the defendant had had trouble, but denied that he had ever tried to frighten him. On cross-examination he was asked if he had not told one of the other witnesses that he had done so. He was not permitted to answer. The question as put did not call the attention of the witness to the circumstances of time and place of his alleged statement, so as to lay the ground for the introduction of contradictory evidence, under the statute (Code Civ. Proc., sec. 3380); it was nevertheless legitimate cross-examination, and an answer should have been permitted. (*Kipp* v. *Silverman,* 25 Mont. 296, 64 Pac. 884.)

5. The defendant requested an instruction to the effect that, in determining the weight to be given to the testimony of every witness, the jury had a right to consider his appearance on the stand, his manner of testifying, his apparent candor or

lack of it, his apparent fairness and means of knowledge, together with all the other facts and circumstances appearing in the evidence. The court failed to submit this and gave instead section 3123 of the Code of Civil Procedure, supplemented by an addition to the effect that, if the jury believed that any witness had willfully and deliberately testified falsely to any material matter, they were at liberty to disregard his testimony entirely, except so far as it was corroborated by other credible evidence in the case. The instruction requested should have been given. It called the attention of the jury particularly to matters which they should consider in weighing the testimony, and the defendant had a right to have this done. In other respects, we think the charge was full and fair, covering all the phases of the case.

6. Though counsel contended earnestly that the verdict is contrary to the evidence, we think it sufficient to go to the jury, and, though it is conflicting in important particulars, we cannot say that their finding thereon was wrong.

The judgment and order are reversed, and the district court is directed to grant the defendant a new trial.

*Reversed and remanded.*

Mr. Justice MILBURN and Mr. Justice HOLLOWAY concur.