STATE, RESPONDENT, v. LEWIS, APPELLANT.

(No. 3,808.)

(Submitted June 22, 1916.  Decided July 12, 1916.)

[159 Pac. 415.]

*Criminal   Law — Homicide — Instructions—"Assault"—"Reasonable   Doubt" — Verdict — Impeachment — Affidavits   of   Jurors — Trial—Practice—Exceptions—Briefs—Assignments   of Error.*

Appeal—Briefs—Assignments of Error—Insufficiency.

1.   General assignments that the evidence is insufficient to sustain the verdict in a criminal cause, and that the verdict is against law, without pointing out the particulars in which the former is insufficient and the latter is against law, do not entitle the appellant to a review thereof.

Criminal Law—Exceptions—Review—Statutes.

2.   *Held,* that Chapter 135, Laws of 1915, dispensing with the necessity of formal exceptions, governs the procedure in civil—not criminal—causes.

Same—Homicide—Instructions—"Assault"—Definition.

3.   Where the court in its instructions had used the words "assailant" and "assaulted," on a trial for murder in the first degree, refusal to submit an instruction defining the term "assault" was harmless, inasmuch as its meaning must be regarded as understood by the average juror without specific definition.

Same.

4.   Where under the evidence the defendant was either guilty of unlawful homicide or not guilty at all, refusal to give an instruction defining the lesser offense of assault was proper.

Same—Instructions—"Reasonable Doubt"—Definition.

5.   An instruction that a reasonable doubt is a doubt founded on reason and not one arising from mere caprice or groundless conjecture, though not in the words of the one approved in *Territory* v. *McAndrews,* **3** Mont. 158, was not open to objection.

   [As to what is a reasonable doubt, and instructions to jury on the subject, see note in 48 Am. St. Rep. 566.]

Same.

6.   After the trial court has fully stated to the jury in the instructions the presumptions of which the law gives the defendant charged with crime the benefit, it is sufficient if they are told that they must acquit him unless they are satisfied of his guilt beyond a reasonable doubt, without further definition of that term.

Same—Instructions—What are not.

7.   Directions to the jury as to their conduct in the jury-room and as to the form in which they may return their verdict are not instructions on the law of the case, which must be in writing; hence they may be given orally.

Same—Verdict—Impeachment—Affidavits of Jurors.

8. Except in cases where it has been reached by means other than a fair expression of opinion by all the jurors, their verdict cannot be impeached by the affidavit of one or more of the individuals composing the jury.

*Appeal from District Court, Gallatin County; Ben B. Law, Judge.*

GEORGE W. LEWIS was convicted of manslaughter, and appeals from the judgment and an order denying him a new trial. Affirmed.

*Mr. Geo. D. Pease,* for Appellant, submitted a brief and argued the cause orally.

The court erred to the prejudice of the defendant in imposing a fine of $50 against Mr. Pease, one of the defendant's counsel, for contempt, and in making the ruling as set forth in the record. The mere fact that counsel was fined for contempt, we agree, is not sufficient error to show prejudice, but if counsel for defendant, without any just cause or excuse, is fined by the court for contempt under such circumstances as show the court has done the same in a spirit of anger and through unfairness, then the courts hold that such fining of defendant's counsel for contempt is prejudicial error, especially where the same is done in the presence of the jury. "The utmost care should be used by the trial judge, where human life is involved, not to let any expression fall capable of being interpreted by the jury as an index of what he thinks of the prisoner, his counsel or his case." (*Mathis v. State,* 45 Fla. 46, 34 South. 287; 1 Brickwood's Sackett on Instructions, 3d ed., sec. 88; *State* v. *Allen,* 100 Iowa, 7, 60 N. W. 274; *Chicago City Ry. Co.* v. *McLaughlin,* 146 Ill. 353, 34 N. E. 796; *Wheeler* v. *Wallace,* 53 Mich. 355, 364, 19 N. W. 33, 37; *Walker* v. *Coleman,* 55 Kan. 381, 49 Am. St. Rep. 254, 40 Pac. 640; 12 Cyc. 542.) "An expression of impatience at the waste of time made to one of the counsel in the conduct of the case is held to be error." (1 Brickwood's Sackett on Instructions, 3d ed., sec. 88; *State* v. *Philpot,* 97 Iowa, 365, 66 N. W. 730; *Valley Lumber Co.* v. *Smith,* 71 Wis. 304, 5 Am. St.

Rep. 216, 37 N. W. 412; *Anglo-Am. Packing etc. Co. v. Baier,* 31 Ill. App. 653; *State* v. *Pratt,* 121 Mo. 566, 26 S. W. 556.)

The law does not authorize the trial court to comment upon the evidence and to unjustly criticise counsel, as was done in this case. (*Kirk* v. *Territory,* 10 Okl. 46, 60 Pac. 797; *People* v. *Kindleberger,* 100 Cal. 367, 34 Pac. 852, 853; *People* v. *Hare,* 57 Mich. 505, 24 N. W. 843; *Garner* v. *State,* 28 Fla. 113, 29 Am. St. Rep. 232, 9 South. 835, 843.)

The instruction given on the subject of reasonable doubt, omits to state that it is "such a doubt only as in a fair, reasonable effort to reach a conclusion upon the evidence, using the mind in the same manner as in other matters of importance, prevents the jury from coming to a conclusion in which their minds rest satisfied"; it omits to include within its definition "all of the evidence produced"; it omits the element of moral certainty, and places the burden upon the jury of giving a reason for a doubt. This court has approved the definition of "reasonable doubt" requested, being the definition set forth in *Territory* v. *McAndrews,* 3 Mont. 158, 165, in the following cases: *State* v. *Gibbs,* 10 Mont. 213, 10 L. R. A. 749, 25 Pac. 289; *State* v. *Vineyard,* 16 Mont. 138, 40 Pac. 173; *State* v. *Gleim,* 17 Mont. 17, 52 Am. St. Rep. 655, 31 L. R. A. 294, 41 Pac. 998; *State* v. *Clancy,* 20 Mont. 498, 52 Pac. 267; *State* v. *Harrison,* 23 Mont. 79, 57 Pac. 647.

In the definition of "reasonable doubt" given by the court in the instruction objected to in this case, the burden is placed upon the jurors of finding a reason for the doubt. In other words, the court says a reasonable doubt is a doubt which has some reason for its basis. It has been time and again held that such an instruction is error. (*Smith* v. *State,* 142 Ala. 14, 39 South. 329; *Darden* v. *State,* 73 Ark. 315, 84 S. W. 507, 200 U. S. 615, 50 L. Ed. 621, 26 Sup. Ct. Rep. 758; *State* v. *Lee,* 113 Iowa, 348, 85 N. W. 619.)

*Mr. J. B. Poindexter,* Attorney General, *Mr. J. H. Alvord,* Assistant Attorney General, and *Mr. H. A. Bolinger,* County

Attorney of Gallatin County, submitted a brief in behalf of Respondent; *Mr. Alvord* and *Mr. I. W. Choate,* Assistant County Attorney of Gallatin County, argued the cause orally.

An offer was made to show that deceased had criticised Lewis, and that he was "more or less abusive." This offer, of course, is based upon the theory of self-defense, but a mere showing of dislike or criticism is not sufficient. The defendant in support of self-defense must show threats. Mere vituperative and abusive language about the defendant does not amount to a threat, and is not admissible as such. Such language must indicate an intention on the part of the deceased to take life or do serious bodily injury. (*Combs* v. *State,* 75 Ind. 215; *Chalk* v. *State,* 35 Tex. Cr. App. 116, 32 S. W. 534.) At least one court has gone so far as to hold that such evidence is not competent for any purpose when not communicated to the defendant prior to the homicide. (*Levy* v. *State,* 28 Tex. Cr. App. 203, 19 Am. St. Rep. 826, 12 S. W. 596.)

The definition of reasonable doubt given in *Territory* v. *McAndrews,* has, it is true, been approved by many courts of last resort, including our own, but at no time has any court gone to the length of holding that the abstract idea embraced in the words "reasonable doubt" can be defined only by the words used in *Commonwealth* v. *Webster,* and adopted by our supreme court in *Territory* v. *McAndrews.* The supreme court of the United States has often expressed its disapproval of attempts to define the words "reasonable doubt." In *United States* v. *Hopkins,* 26 Fed. 443, Judge Dick said: "The inherent imperfection of the language renders it impossible to define in exact, express terms the nature of a reasonable doubt." In *Miles* v. *United States,* 103 U. S. 304, 26 L. Ed. 481, the court said: "Attempts to explain the term 'reasonable doubt' do not usually result in making it any clearer to the minds of the jury." (See, also, *Hopt* v. *Utah,* 120 U. S. 430, 30 L. Ed. 708, 7 Sup. Ct. Rep. 614; *Commonwealth* v. *Tuttle,* 12 Cush. (66 Mass.) 502; *Commonwealth* v. *Cobb,* 14 Gray (80 Mass.), 57;

*Commonwealth v. Harman,* 4 Pa. St. 269, 274; *Regina v. White,*
4 Fost. & F. 383.)

Acquiescing in the view that the words "reasonable doubt"
are not capable of definition, that they define themselves, that
they are words of common use, and as easily understood by jurors
as by judges, Wigmore on Evidence, section 2497, says: "The
effort to perpetuate and develop these unserviceable definitions
is a useless one, and serves to-day chiefly to aid the purposes
of the tactician. It should be wholly abandoned."

It is not error to give oral direction to a jury as to their con-
duct while deliberating. These are not *instructions.* "A di-
rection as to the form of a verdict is not an instruction which
must be written." (*Douglas v. Territory,* 1 Okl. Cr. 583, 98
Pac. 1023; *People v. Bonney,* 19 Cal. 426; *State v. Potter,* 15
Kan. 302.)

MR. CHIEF JUSTICE BRANTLY delivered the opinion of
the court.

The defendant was tried upon an information charging him
with the crime of murder in the first degree. He was found
guilty of manslaughter, and sentenced to confinement in the
state prison for a term of not less than seven years and six
months nor more than ten years. He has appealed from the
judgment and an order denying his motion for a new trial.

The homicide occurred during the afternoon of May 3, 1915,
on a farm owned by L. S. Briggs, a few miles from Bozeman,
in Gallatin county. The defendant and deceased, Joseph Ennis,
had been in the employment of Briggs, who resided in Bozeman,
and had charge of the cattle and horses belonging to him and
kept on the farm. A feeling of jealousy had arisen between
them as to the extent of the authority conferred upon them,
respectively, by Briggs for the management and care of the
stock. Blame for the supposed loss of a calf, while the defend-
ant and a young son of the deceased were driving some cows
with their calves to the farm from a neighboring farm where
they had been kept, was charged by defendant to the son.

Understanding that he was charged with a theft of the calf, the son reported the charge to the deceased. The pre-existing jealousy thus ripened into enmity, which found expression in threats by deceased that he would have a settlement with the defendant. On the afternoon of the day above stated, Briggs had gone out from Bozeman to deliver some cattle which he had sold to one Bowles. When the work of separating the cattle had been accomplished, Briggs and other persons present went to inspect a young stallion kept on the place. Defendant and deceased were both present. The former, expecting trouble, had armed himself with a revolver. The latter was not armed. During the course of the inspection the deceased accosted the defendant with reference to the alleged charge against his son. After the exchange of a few words the two began to fight with their fists. In the few moments during which the struggle continued, defendant's revolver was discharged three times, the last shot inflicting upon the deceased a wound which resulted in his death about two hours later. The defense interposed by the defendant was that the revolver was accidentally discharged while he was using it as a club to protect himself from an assault upon him by deceased, he having drawn it for this purpose only.

Error is assigned upon rulings in the admission and exclusion of evidence, upon the giving and refusing to give certain instructions, upon insufficiency of the evidence to justify the verdict, and upon the ground that the verdict is contrary to law. Error is alleged also upon the conduct of the trial judge and county attorney by reason of which the defendant did not have a fair and impartial trial.

1. Counsel does not undertake in his brief to point out any [1] particular in which the evidence is insufficient. We shall therefore pass the assignment without comment, further than to say that we have examined the record with attention and find the evidence amply sufficient to justify the conclusion of the jury. Neither does counsel point out wherein the verdict is contrary to any of the instructions. In our opinion, the charge

embodies the law applicable to the facts disclosed by the evidence, and fully and fairly submits every issue in the case. Questions presented by the refusal of the court to submit requested instructions will be noticed later.

2. During the trial, counsel seems to have proceeded upon [2] the assumption that Chapter 135 of the Laws of 1915 (Laws 1915, p. 298) applies to criminal as well as civil cases, for no formal exceptions were reserved to the rulings upon the admissibility of evidence during the course of the trial. Neither were exceptions reserved to anything said or done by the trial judge or the county attorney. Whatever may have been counsel's view of the law upon the subject, the result is that none of the questions sought to be presented by the assignments in these particulars are before us for review. Section 1 of the Act in question, except as therein provided, dispenses with the necessity of formal exceptions in civil cases, but has no application to criminal cases. The purpose of the Act, as appears upon its face, was to enlarge the application of section 6784 of the Revised Codes, which relates to exceptions in civil cases only. This being so, the provisions of the Codes, relating to exceptions in criminal cases, were left in full force and are controlling. These are found in sections 9340, 9346 and 9347 of the Revised Codes. It requires only a cursory examination of these, together with section 9271, to understand that in criminal cases specific objection and exception, reserved upon the particular ruling, are necessary to require or permit this court to review it.

3. Contention is made that the court erred in refusing to [3] submit to the jury a definition of the term "assault." The purpose for which the instruction was offered is not made clear by what transpired at the time the instructions were settled. The argument is that, inasmuch as the terms "assaulted," "assailant," *etc.*, are found in the other instructions, a definition of the term "assault" was necessary to enable the jury to understand the others. While the court might properly have submitted the instruction, we do not think the defendant

should be granted a new trial because it refused to do so. The terms in question, like the expression "preponderance of the evidence," are of such common use that their meaning may be regarded as understood by the average juror without specific definition. Some latitude must be accorded to the trial court in such matters, in view of the facts in evidence and the character and apparent intelligence of the jury in the particular case. (*Rand* v. *Butte El. R. Co.*, 40 Mont. 398, 107 Pac. 87.) [4] Moreover, in view of the defense interposed, the jury, we think, would not have been justified in finding the defendant guilty of the lesser offense of assault. He was guilty of unlawful homicide or should have been acquitted entirely. (*State* v. *McGowan*, 36 Mont. 422, 93 Pac. 552; *State* v. *McDonald*, 51 Mont. 1, 149 Pac. 279.) On neither theory, therefore, do we think the court was in error in refusing the instruction.

4. On the subject of reasonable doubt the court instructed the [5] jury as follows: "The term 'reasonable doubt' best defines itself. In a legal sense, however, a reasonable doubt is a doubt which has some reason for its basis; a doubt for which there exists in the minds of the jurors a reason, and not a doubt arising from mere caprice or groundless conjecture." It is argued that this instruction was prejudicial, in that it put upon the defendant the burden of furnishing to every juror a reason why he should have a reasonable doubt of defendant's guilt; that it required each juror to have a reason which he could express in words, and was calculated to confuse rather than enlighten the jury. It is true, as counsel says, that this court has frequently approved as correct and sufficient to meet all requirements the instruction taken from *Commonwealth* v. *Webster*, 5 Cush. (59 Mass.) 295, 52 Am. Dec. 711, which counsel requested the court to give in this case. (*Territory* v. *McAndrews*, 3 Mont. 158; *State* v. *Martin*, 29 Mont. 273, 74 Pac. 725; *State* v. *De Lea*, 36 Mont. 531, 93 Pac. 814.) It does not follow, however, that it must for this reason condemn the instruction submitted. It is not open to the objections

urged against it. It did not cast any burden upon the defendant; nor did it require any juror to be able to state a reason for his conclusion; nor can it be said that it was misleading or confusing unless the use of the expression "reasonable doubt" itself imports confusion and uncertainty. On the contrary, like the expression "to a moral certainty," its legal equivalent, it is in common use and well understood by any person of average intelligence. It is for this reason that many courts and text-writers characterize as futile efforts to define or explain it. (*Miles* v. *United States,* 103 U. S. 304, 26 L. Ed. 481; *Hopt* v. *Utah,* 120 U. S. 430, 30 L. Ed. 708, 7 Sup. Ct. Rep. 614; *State* v. *Davis,* 48 Kan. 1, 28 Pac. 1092; *State* v. *Killion,* 95 Kan. 371, 148 Pac. 643; Wigmore on Evidence, 2497; Chamberlayne on Modern Law of Evidence, 996 B.) It [6] may well be deemed sufficient, after the court has fully stated to the jury the presumptions of which the law gives the defendant the benefit, as was the case here, if they are told without further explanation that they must acquit him unless they are satisfied of his guilt beyond a reasonable doubt. We have frequently said it is safer for trial courts to use instructions which have been approved by this court (*State* v. *Gibbs,* 10 Mont. 213, 10 L. R. A. 749, 25 Pac. 289), instead of formulating new ones. Even so, we do not think error was committed in submitting the instruction in question. Other instructions refused were fully covered by the charge as given.

5. Contention is made that the court erred in giving oral instructions to the jury. The record furnishes no ground for this contention. At the close of the argument the court orally [7] directed the jury as to their conduct in the jury-room and as to the form in which they might return their verdict, and informed them that their verdict must be unanimous. There was no error. Directions as to such matters are not instructions on the law of the case which must be written. (*People* v. *Bonney,* 19 Cal. 426; *State* v. *Potter,* 15 Kan. 302.) If it be conceded that there was error, no objection was made at the time nor any exception reserved as required by the statute. (Rev. Codes, sec. 9271.)

6. It is said that the defendant did not have a fair trial by
[8]    reason of the bias and prejudice of juror Webster.    We
find in the record an affidavit by Frank P. Van Ausdol, who
served as a juror in the case, from which it appears that while
the jury were discussing the reputation of Ennis, the deceased,
Webster made the statement that the defendant was reputed
to be a gambler, and that he had robbed his (Webster's) boy
twice, and that, upon being charged with entertaining prejudice
against the defendant, he admitted that he did so. There is
also an affidavit by Webster in which he denies that he made
any such statement. These affidavits cannot be considered for
any purpose. The general rule is that a verdict cannot be
impeached by the affidavit of jurors who rendered it. The
one exception is that where it has been decided by means other
than a fair expression of opinion by all the jurors. (Rev.
Codes, sec. 9350; *State* v. *Beesskove,* 34 Mont. 41, 85 Pac. 376;
*State* v. *Wakely,* 34 Mont. 427, 117 Pac. 95.) In *State* v.
*Beesskove* it was said: "This section provides for the one ex-
ception, namely, cases where the verdict has been decided by
lot, or by any means other than a fair expression on the part
of all the jurors. In such case the impeaching affidavit may
be made by members of the jury. (Code Civ. Proc., sec. 1171;
Rev. Codes, sec. 6794.) This express exception, under the rule,
'*expressio unius est exclusio alterius,*' it would seem excludes
all other exceptions."

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.