KOMPOSH, RESPONDENT, *v.* POWERS ET AL., APPELLANTS.

(No. 5,854.)

(Submitted February 15, 1926. Decided February 27, 1926.)

[244 Pac. 298.]

*Eminent Domain—Constitution—Private Roads—Necessity for Establishment—Instructions—Special Interrogatories—Discretion—New Trial—Newly Discovered Evidence—Verdict—Impeachment by Jurors—Trial—Evidence—Objections—Appeal and Error—Conflict in Evidence—Judgment Conclusive.*

Constitution—Eminent Domain—Public or Private Use—Question for Courts.
    1. The taking of private property for the private use of another violates the Fourteenth Amendment to the federal Constitution, and the legislature has not the power to declare that that which is in truth a private use shall be a public one, the question whether a particular use is a private or public one being determinable by the courts.

---

1. Public use and necessity for taking by eminent domain as legislative or judicial question, see note in 42 Am. St. Rep. 406.
    Power of courts to consider question of public use for which eminent domain sought, see note in 88 Am. St. Rep. 926. See, also, 10 R. C. L. 29.

494 KOMPOSH *v.* POWERS ET AL. [Dèc. T. '25

[75 Mont. 493.]

Eminent Domain—Highways—Private Road—Establishment—When not Open to Constitutional Objection.

2. Whether a way is a public or private one is determined by the extent of the right to use it, not by the extent to which that right is actually exercised; and if a private road sought to be established under section 9955, Revised Codes of 1921, leading from a public highway through lands of a private owner to those owned by plaintiff, may be used by the public generally, although others than plaintiff may have slight occasion to use it, the statute authorizing its establishment as section 9955 does, under such circumstances is not open to constitutional objection.

Trial — Evidence — Overruling Objection to Question Answered Prior Thereto—Harmless Error.

3. If error was committed in overruling an objection to a question which had theretofore been answered fully, it was. harmless and insufficient to warrant reversal of the judgment.

Eminent Domain—Private Road—Complaint—Description of Lands—When Sufficient.

4. Description of lands sought to be condemned for a private road required by section 9940, Revised Codes of 1921, to be set forth in the complaint, is sufficient if it is definite enough to identify the lands.

Appeal and Error—Conflict in Evidence—Judgment Conclusive.

5. The trial court's determination on conflicting evidence will not be disturbed on appeal if there is substantial evidence to sustain it.

Eminent Domain—Private Road—Necessity Therefor—Correct Instruction.

6. An instruction as to the necessity of the establishment of a private way, to the effect that plaintiff was not required to show an absolute or indispensable necessity therefor, but that if a reasonable necessity was shown it was sufficient to warrant a finding in favor of plaintiff, was a correct statement of the law.

Instructions Given are Law of Case—Jury—Presumption.

7. Instructions given constitute the law of the case, and in the absence of anything to indicate the contrary, it will be assumed on appeal that the jury followed them.

Trial—Jury—Special Interrogatories—Discretion.

8. The propriety of submitting a special interrogatory to the jury lies within the discretion of the trial court, and in the absence of a showing of abuse thereof, refusal to submit it is not subject to correction on appeal.

Eminent Domain — Private Road — Damages—Commissioners—Appointment not Required.

9. Under sections 1765 and 9955, Revised Codes of 1921, authorizing the establishment of a private road, the appointment of commissioners to determine the damages occasioned thereby, *etc.*, is not necessary, the matters ordinarily determined by commissioners

---

2. Right to condemn lands for private ways and roads, see note in 91 Am. Dec. 585.

What constitutes public use for which property may be taken, see notes in 2 Ann. Cas. 50; 3 Ann. Cas. 1113; 4 Ann. Cas. 1175; 14 Ann. Cas. 903; Ann. Cas. 1912D, 1002; Ann. Cas. 1918A, 203.

Constitutionality of condemnation proceedings to establish a private road, see notes in 16 L. R. A. 83; 22 L. R. A. (n. s.) 102. See, also, 10 R. C. L. 40.

[75 Mont. 493.]

in eminent domain proceedings being determinable in such a case by the jury.

**New Trial—Newly Discovered Evidence—Proper Denial of Motion.**

10. A new trial on the ground of newly discovered evidence was properly denied where the only excuse offered by movant was that while he knew of the alleged new evidence prior to and at the time of the trial, he thought that the fact sought to be brought out on retrial had been sufficiently covered by the testimony given and deemed it unnecessary to introduce it.

**Same—Statutory Remedy.**

11. A motion for a new trial is a statutory remedy which can be invoked only on grounds provided for in the statute.

**Same—Impeachment of Verdict by Jurors—Affidavits—Insufficiency.**

12. Under section 9397, Revised Codes of 1921, the jury can impeach their verdict only when arrived at by resort to chance; hence affidavits by six jurors filed in support of a motion for new trial to the effect that two-thirds of the jury were in favor of denying plaintiff the relief sought and would have found in favor of defendant if they had been advised as to a fact the defendant proposed to establish if a new trial was granted, were properly ignored by the trial court.

---

[1] Constitutional Law, 12 C. J., sec. 1042, p. 1252, n. 86–91.
[2] Eminent Domain, 20 C. J., sec. 38, p. 549, n. 43; p. 550, n. 44; sec. 44, p. 561, n. 96; p. 562, n. 98.
[3] Appeal and Error, 4 C. J., sec. 2949, p. 966, n. 98. Eminent Domain, 20 C. J., sec. 384, p. 980, n. 22. Private Roads, 32 Cyc., p. 374, n. 75.
[4] Eminent Domain, 20 C. J., sec. 364, p. 953, n. 79; sec. 377, p. 968, n. 6.
[5] Appeal and Error, 4 C. J., sec. 2855, p. 884, n. 37.
[6] Eminent Domain, 20 C. J., sec. 114, p. 631, n. 5; sec. 381, p. 975, n. 76; sec. 382, p. 976, n. 86. Trial, 38 Cyc., p. 1711, n. 19.
[7] Appeal and Error, 4 C. J., sec. 2717, p. 771, n. 76. Trial, 38 Cyc., p. 1594, n. 87.
[8] Appeal and Error, 4 C. J., sec. 2718, p. 773, n. 91; sec. 2807, p. 828, n. 19. Trial, 38 Cyc., p. 1907, n. 8.
[9] Eminent Domain, 20 C. J., sec. 396, p. 1000, n. 99. Private Roads, 32 Cyc., p. 373, n. 60 New.
[10] New Trial, 29 Cyc., p. 883, n. 87; p. 896, n. 38 New.
[11] New Trial, 29 Cyc., p. 759, n. 85.
[12] New Trial, 29 Cyc., p. 988, n. 21.

*Appeal from District Court, Carbon County; O. F. Goddard, Judge.*

ACTION by Joseph Komposh against Francis Powers, as the administrator of the estate of Ann Powers, deceased, and another to establish a private road. Judgment for plaintiff and defendants appeal. Affirmed.

---

11. See 20 R. C. L. 218.

*Mr. C. C. Rowan,* for Appellants, submitted a brief and one in reply to that of Respondent, and argued the cause orally.

This action is brought under the provisions of section 9955 and subdivision 6 of 9934, Revised Codes of 1921, which purport to authorize the condemnation of a private road. Appellants contend that said sections are unconstitutional, as being in conflict with the Fourteenth Amendment to the Constitution of the United States.

We believe the authorities cited below fully establish that the question of what is a public use is a judicial question and that the legislative statement that a private road is a public use is unconstitutional and void. Also that a private road such as the road in question, in which the public has no interest whatever, and which is used only for general transportation purposes by an individual, is not a public use within the meaning of our Constitution and condemnation thereof is contrary to the Fourteenth Amendment to the Constitution of the United States. (*Clark* v. *Board of Commrs. of Mitchell Co.,* 69 Kan. 542, 66 L. R. A. 965, 77 Pac. 284; *Bankhead* v. *Brown,* 25 Iowa, 540; *Fanning* v. *Gilliland,* 37 Or. 369, 82 Am. St. Rep. 758, 61 Pac. 636, 62 Pac. 209; *Dallas* v. *Hallock,* 44 Or. 246, 75 Pac. 204; *State* v. *Hawk,* 105 Or. 319, 208 Pac. 709, 209 Pac. 607; *State ex rel. Anderson* v. *Superior Court,* 119 Wash. 406, 205 Pac. 1051; *Gaston* v. *Portland,* 48 Or. 82, 84 Pac. 1040; *Bloodgood* v. *Mohawk & Hudson R. R. Co.,* 18 Wend. (N. Y.) 9, 31 Am. Dec. 316; *Wilkinson* v. *Leland,* 27 U. S. 627, 7 L. Ed. 542 [see, also, Rose's U. S. Notes] ; *Pittsburg etc. R. Co.* v. *Benwood Iron Works,* 31 W. Va. 710, 2 L. R. A. 680, 8 S. E. 453; *Varner* v. *Martin,* 21 W. Va. 534; *Fallsburg Power Mfg. Co.* v. *Alexander,* 101 Va. 98, 99 Am. St. Rep. 855, 61 L. R. A. 129, 43 S. E. 194; *In re Barre Water Co.,* 72 Vt. 413, 48 Atl. 653; *Berrien Springs Water Co.* v. *Berrien Circuit Judge,* 133 Mich. 48, 103 Am. St. Rep. 438, 94 N. W. 379; *Brown* v. *Gerald,* 100 Me. 351, 109 Am.

[75 Mont. 493.]

St. Rep. 526, 70 L. R. A. 472, 61 Atl. 785; *Healy Lumber Co.*
v. *Morris,* 33 Wash. 490, 99 Am. St. Rep. 964, 63 L. R. A.
820, 74 Pac. 681; *Borden* v. *Trespalacois Rice & Irr. Co.,* 98
Tex. 494, 86 S. W. 11; *Richmond* v. *Carneal,* 129 Va. 388,
106 S. E. 403.)

*Mr. John G. Skinner,* for Respondent, submitted a brief and
argued the cause orally.

Citing 10: R. C. L. sec. 36; 1 Lewis on Eminent Domain;
20 C. J. 561; *Bashor* v. *Bowman,* 133 Tenn. 269, 180 S. W.
326; *Chesapeake Stone Co.* v. *Moreland,* 31 Ky. Law Rep.
1075, 104 S. W. 762; *Mt. Vernon-Woodberry Cotton Duck Co.*
v. *Alabama Interstate Power Co.,* 240 U. S. 30, 60 L. Ed. 507,
36 Sup. Ct. Rep. 234 [see, also, Rose's U. S. Notes]; *Rindge
Co.* v. *Los Angeles County,* 262 U. S. 700, 67 L. Ed. 1186,
43 Sup. Ct. Rep. 689; *Klamath County,* 33 Or. 225, 53 Pac.
604; *Sullivan* v. *Kline,* 33 Or. 260, 54 Pac. 154.

MR. JUSTICE MATTHEWS delivered the opinion of the
court.

This is an appeal from a judgment in favor of plaintiff and
against defendants establishing a road from the lands of plain-
tiff across the lands of defendants to a public highway, and
awarding damages therefor to defendants, to be paid by
plaintiff with all costs of the action.

The complaint alleges that the plaintiff is the owner of cer-
tain agricultural lands in Carbon county which he occupies
as a home for himself, his wife, and several children, and
on which he raises crops of hay and grain; that he has no
"practical outlet from his said land to the public highway,
* * * and that it is necessary and plaintiff requires a right
of way through the lands of defendants for a private road to
connect his lands with the public highway; * * * that
plaintiff has children at home who should be going to school,
but said children * * * have no way or road to reach

the schoolhouse,'' and plaintiff has approximately 1,000 bushels of grain and a large quantity of hay which he is unable to move to market. It describes the strip of land to be taken, and declares the proposed road to be a "public use," and its purpose to enable the plaintiff to haul the produce to market, send his children to school, to haul supplies and fuel to the home, and "for using the same for road purposes and traveling purposes generally."

Plaintiff alleges that he is willing to pay to defendants all damages suffered by reason of the taking of the land and for maintaining and using "said highway and road," and declares that he sought to acquire such right of way by purchase, but without success, and that it became necessary for him to seek condemnation thereof under the provisions of the Code referring to the right of eminent domain.

To this complaint the defendants interposed separate demurrers, which were overruled. Francis Powers, as administrator, by answer joined issue as to the allegations of the complaint, and, as a special defense, alleged that at the time of the commencement of the action plaintiff had a good and sufficient road practically paralleling the proposed road, and within one-half mile of it, which road he admitted was impassable a portion of the year by reason of the depth of snow, but alleged that the same condition would prevail as to the proposed road, and further alleged that plaintiff had also a second road across the lands of other neighbors which he could use. He denied that plaintiff had attempted to purchase a right of way for the proposed road, and alleged that the proposed road would damage the property in his charge to the extent of the full value thereof, or $5,000. Maurice Powers, by separate answer, denied the necessity for the road, and alleged that the same would damage his property to the extent of $500.

By replication the plaintiff denied the new matter contained in the answers, and alleged affirmatively that he had but a way by sufferance across defendants' lands at any time, and that he had been frequently denied the right to travel that

way; that gates thereon had been closed and wired; and that he had been warned not to use the said road; and, further, that such way was through boggy ground and impassable, not only when blockaded by snow, but during the irrigating season, and that, even if permitted to do so, he could use the road "only occasionally." He alleges that the damage to the lands held by Francis Powers would not exceed $200, and that to the Maurice Powers land would not exceed $25.

The cause was tried to the court, and a jury duly impaneled for that purpose. At the close of plaintiff's evidence defendants moved for judgment of nonsuit, which motion was overruled, and at the close of all the evidence defendants moved for a directed verdict, which motion was also overruled. The court instructed the jury as to the law and as to their duty in such a case, and sent them out to view the entire premises involved, including the proposed road as laid out on the ground and described in the pleadings, and any other practicable route. The jury returned their verdict in favor of plaintiff on all issues in the case, and specifically found that "the road described in the complaint and in the evidence is necessary to be taken by said plaintiff for highway purposes," and fixed the amount of damages to be awarded to each of the defendants. The court found that the use to which plaintiff sought to apply the land in question was "a public use authorized by law," and upon the findings and verdict made and caused to be entered the judgment appealed from. The defendants moved for a new trial and supported the motion by affidavits. The motion was denied.

The proceeding here reviewed was instituted under the provisions of sections 9933 to 9958, inclusive, comprising Chapter 14, Revised Codes of 1921, entitled "Eminent Domain," which term is defined by section 9933 as "the right of the state to take private property for public use." Section 9934 then provides that "subject to the provisions of this chapter, the right of eminent domain may be exercised in behalf of the fol-

lowing public uses: * * * [with others] 6. Private roads leading from highways to residences or farms.''

Section 9955 reads: ''Private roads may be opened in the manner to be prescribed by the Political Code, but in every case the necessity of the road, and the amount of all damage to be sustained by the opening thereof, shall be first determined by a jury, and such amount, together with the expenses of the proceeding, shall be paid by the person to be benefited.'' Turning to the Political Code for direction as to the manner of opening ''private roads,'' we find but one section on the subject; *i. e.,* section 1765, Revised Codes of 1921, which merely provides in this regard that ''private roads may be established in the manner provided in sections 9933 to 9958 of these Codes.''

Defendants predicate error upon the action of the court (1) in overruling defendants' demurrers to the complaint. They do not, however, attack the complaint as to its sufficiency in either form or substance, but challenge the constitutionality of the above statutory provisions on the grounds discussed in paragraphs 1, 2 and 3 of this opinion.

Further specifications are that the court erred in (2) the admission of evidence; (3) overruling defendants' motion for nonsuit; (4) overruling defendants' motion for a directed verdict; (5) the giving of instruction No. 2, and refusing to give certain offered instructions declaring the contrary rule of law; (6) in refusing to give certain offered instructions based on defendants' theory of the case; (7) refusing to submit a certain special interrogatory to the jury; (8) entering judgment for plaintiff and against defendants; and (9) overruling defendants' motion for a new trial.

1. The first contention of counsel is that an Act which [1] attempts to take private property for a private use is unconstitutional, and cites a long line of authorities wherein such acts are held invalid. In sustaining this contention we need go no further than to quote from our own case of *Helena Power Transmission Co.* v. *Spratt,* 35 Mont. 108, 10 Ann. Cas. 1055, 8 L. R. A. (n. s.) 567, 88 Pac. 773, declaring that

"private property without the owner's consent cannot be taken for the private use of another without violating the Fourteenth Amendment to the Constitution of the United States."

2. Counsel next asserts that the legislature cannot, by its mere fiat, transform that which is in truth a private use into a public use, but must leave to the courts the determination as to whether a particular use is public or private. Again counsel submits numerous authorities in support of his position. Without cumbering this opinion with the citation of these authorities, we again agree with counsel. Section 9943 provides that the court must, among other things, determine in such a proceeding as this "whether or not the use for which the property is sought to be appropriated is a public use, within the meaning of the laws of this state," and the highest court in the land has recently declared that the question is one for the courts. (*Rindge Co.* v. *Los Angeles*, 262 U. S. 700, 67 L. Ed. 1186, 43 Sup. Ct. Rep. 689.)

3. In construing statutes providing for the establishment [2] of "private roads," there is considerable apparent conflict in the authorities as to the character of the use. Mr. Lewis, in his work on Eminent Domain, volume 1, page 519, says: "However, * * * the key to their reconciliation is to be found in the fact that the phrase 'private roads' * * * is used in different states and different statutes to designate roads of entirely different character,"—and again on page 232 the author lays down the following test: "If, by a fair construction and operation of the statute, the road when laid out, is in fact a public road for the use of all who may desire to use it, the law is not liable to the charge of unconstitutionality, and is valid though the road may be laid out on the application of, paid for and kept in repair by the petitioner, and primarily designed for his benefit; but if such road is to become a mere private way and not open to the public, the law sanctioning it is void."

On examination, the authorities do not so readily fall into the two classes stated in the text above. For example, the

supreme court of Kansas, evidently overlooking the rule that the question of "public use" was for the courts, declared a statute similar to our section 9955, but without a companion section such as our section 9934, unconstitutional for the reason that the legislature had described the roads to be established thereunder as "private roads," stating: "We are asked to proclaim by judicial fiat that roads designated by the lawmakers as 'private highways' are public in character. To so declare would be an aggressive and unwarranted invasion into the domain of legislation, from which the courts are excluded."

The distinction noted is, however, generally observed, and, where the wording of the statute is such as to disclose an intent on the part of the legislature to limit the use of a road, when established, to the individual applying therefor, such statute is held to be unconstitutional. Thus in *Osborn* v. *Hart,* 24 Wis. 91, 1 Am. Rep. 161, it was held that a statute which, after providing for the establishment of private roads, declared such private roads, "when so laid out, shall be for the use of such applicant, his heirs and assigns,  *  *  *  nor shall the *  *  *  owner of the land through which such roads shall be laid out be permitted to use the same as a road," unless he signifies his intention of so doing before the damages are ascertained, was in violation of the Fourteenth Amendment, as it disclosed the intention of the legislature to authorize the establishment of strictly private roads. A similar statute was likewise declared unconstitutional in Illinois. (*Nesbitt* v. *Trumbo,* 39 Ill. 110, 89 Am. Dec. 290; *Crear* v. *Crossly,* 40 Ill. 175.)

But the character of a way, whether public or private, is determined by the extent of the *right* to use it, and not by the extent to which that right is exercised (*Butte, Anaconda & Pac. Ry. Co.* v. *Montana Union Ry. Co.,* 16 Mont. 504, 50 Am. St. Rep. 508, 31 L. R. A. 298, 41 Pac. 232), and, where statutes authorize the opening of a road from a public highway through the lands of one or more private owners to the lands of another for general road purposes, and which road the

public generally has the right to travel, although others than the applicant may have slight occasion to do so, they are by the great weight of authority held not to contravene the Fourteenth Amendment, but to be valid enactments. (*Perrine* v. *Farr*, 22 N. J. L. 356; *In re Hickman*, 4 Harr. (Del.) 580; *Robinson* v. *Swope*, 12 Bush (Ky.), 21; *Waddell's Appeal*, 84 Pa. 92; *Sherman* v. *Buick*, 32 Cal. 241, 91 Am. Dec. 577; *Board of Commrs.* v. *Minnear*, 72 Kan. 326, 83 Pac. 828; *Sullivan* v. *Cline*, 33 Or. 260, 54 Pac. 154; *Latah County* v. *Peterson*, 3 Idaho, 398, 29 Pac. 1089; *Towns* v. *Klamath County*, 33 Or. 225, 53 Pac. 604; *Bashor* v. *Bowman*, 133 Tenn. 269, 180 S. W. 326; *Brock* v. *Barnett*, 57 Vt. 172; *State ex rel. Grays Harbor L. Co.* v. *Superior Court*, 82 Wash. 503, 144 Pac. 722.)

As the question as to the character of the road is one for judicial determination, it is of little importance that the statute designates the roads to be established as "private roads." The expression found in a statute, otherwise valid, is "without force or meaning," as "there is no such thing as the establishment of a private road by the exercise of the right of eminent domain." (*Board of Commrs.* v. *Minnear*, above; *Sherman* v. *Buick*, above.)

While the provisions of section 9955, above, would seem to be broad enough to authorize the establishment of a strictly private road, as, for example, a way from one tract of land to another, both owned by the applicant, and if the legislature had left the section to stand alone, it might be open to the charge of unconstitutionality, for a statute authorizing the establishment of such a road as that given in the above example has been properly held to be unconstitutional (*Jones' Heirs* v. *Barclay*, 2 J. J. Marsh. (Ky.) 73; *Reynolds* v. *Reynolds*, 15 Conn. 83); but our legislature has limited the application of the section to "private roads leading from highways to farms" (sec. 9934, above), and have, therefore, authorized the taking, by the exercise of the right of eminent domain, of land for those roads only which are, in fact, not "private

roads," but public roads, which lead from a public highway, and must, therefore, be open to any member of the public who may care to travel it, although few may have occasion to do so. The provisions under consideration do not, therefore, violate the Fourteenth Amendment to the Constitution of the United States.

4. Defendants' second specification of error refers to a [3] question propounded to one Swan, a surveyor, as to whether the land over which he ran a line for the road was plowed at the time he made his survey. To this question defendants objected on the ground that the testimony sought to be elicited was incompetent and immaterial. We are not called upon to determine whether such evidence was competent, for the purpose of aiding the jury in estimating the damage, as the record discloses that the witness had theretofore, without objection, fully answered the question. Under such circumstances, if error was committed, it was harmless, and constitutes no ground for reversal. (*Brownfield* v. *Bier*, 15 Mont. 403, 39 Pac. 461; *Cannon* v. *Lewis*, 18 Mont. 402, 45 Pac. 572.)

5. Counsel argues his third and fourth assignments jointly, contending that the court should have taken the case from the jury for the reasons that the evidence disclosed that plaintiff had other roads from his land to the highway and that the proposed road was, therefore, not a necessity, and, further, that the location of the proposed road was not definitely fixed by the evidence.

(a) While the defendants testified that plaintiff had a right of way through their lands and another through the lands of one Bunny, which he had been using all winter, the plaintiff testified that the road through defendants' lands was not passable during at least a part of the winter and during irrigating seasons, and that he had no right of way therefor, but merely traveled the road by sufferance, which right had been repeatedly denied him by the defendants who repeatedly warned him not to travel that road, and had several times

wired the gates shut. Defendant Francis Powers testified that he had never denied plaintiff the right to travel the road, and did not know of anyone else doing so, but later stated: "I have forbade him using that road there. The reason why I stopped him was because we had ground on both sides of the road, and we always used to go through there, and we used to go through his place, and he stopped us going through there, and we were justified in stopping him going through ours." To what road he referred is not clear. Bunny corroborated plaintiff as to the condition of this road, and testified that there is no road through his field; that plaintiff merely passed through his alfalfa field, when he could get out in no other way, by sufferance of this witness.

The most that can be said on this contention is that there was a conflict in the evidence. From the cold record it would seem that the evidence clearly preponderates in favor of the plaintiff's assertion that he had no right of way or outlet from his premises.

(b) In the complaint and in the judgment the proposed road is described with reference to the legal subdivisions of the land through which plaintiff proposed to lay out such road, as shown by a plat made by the surveyor Swan. Defendants contend that, inasmuch as they introduced evidence to the effect that the fence on their land near the proposed road was over 100 feet from the government line, and the surveyor admitted that he did not go to the government corner between sections 7 and 8, but went by the fence line, the road as laid out on the ground would be more than 100 feet from the survey made therefor. But the surveyor testified that his plat was "approximately correct," and that he did not need to go to the corner designated, as he "went to the United States corner between 7 and 6." Again we have but a conflict in the evidence, on which the court could, and evidently did, decide that the proposed road was correctly described. The road was marked out on the ground, and the jury went over it, so that there could be no question as to its location on the ground.

The requirement of section 9940 in this respect "is met [4] when the description is definite enough to identify the land sought to be taken" (*Interstate Power Co.* v. *Anaconda C. Min. Co.*, 52 Mont. 509, 159 Pac. 408), and it does not clearly appear that the evidence as to the location of the proposed road in any manner departed from the description thereof contained in the complaint. The rule that the trial court's [5] determination on conflicting evidence will not be disturbed if there is any substantial evidence to sustain it is too well settled to require the citation of authorities.

6. Defendants' next contention is that the court erred in [6] giving its instruction numbered 2, defining "necessity" as used in the statute, as follows: "Necessary and necessity, as used in these instructions, do not mean an absolute and indispensable necessity, but reasonable, requisite and proper for the accomplishment of the end in view under the particular circumstances. That is to say, the plaintiff is not required to show, by a preponderance of the evidence, that the road sought to be condemned is an absolute and indispensable necessity for him to go from his land and residence to the county road, but the burden is upon the plaintiff to show that his demands with reference to this road are reasonable, and that the proposed road is reasonably necessary."

Defendants objected to this instruction, and offered instructions laying down a different rule. In support of his contention that a showing of absolute necessity is required, counsel cites *Violet* v. *Martin*, 62 Mont. 335, 205 Pac. 221. That case, however, dealt with the attempted establishment of a way of necessity by prescription, and what is there said has no application to the case at bar.

With reference to the necessity which will warrant the taking under the right of eminent domain, this court has clearly expressed itself contrary to defendants' contention, as follows: "It may be observed generally that necessity, in this connection, does not mean an absolute or indispensable necessity, but reasonable, requisite and proper for the accomplishment of

the end in view, under the particular circumstances of the case."
(*Butte, Anaconda & Pac. Ry. Co.* v. *Montana Union Ry. Co.*,
above; *Northern Pacific Ry. Co.* v. *McAdow*, 44 Mont. 547,
121 Pac. 473.) The court's instruction accurately followed the
pronouncement of this court, and correctly advised the jury
on the subject of necessity, and the court did not, therefore,
err either in giving the instruction or in refusing contrary
instructions.

7. We have examined the remaining offered instructions
which were refused, and compared them with the instructions
given, and are of the opinion that they were sufficiently covered
by the court.

8. The defendants requested the submission to the jury
of the following special interrogatory: "No. 2. If you find a
new road necessary to plaintiff, do you find another more prac-
tical route which it could follow than the one in question,
or do you find a route as practical as the one in question,
and which will cause less damage and inconvenience to defend-
ants?"

When the jury were sent out to view the premises, the court
advised them that they could "look over the entire situation"
and determine whether there were any other routes which
would be practical and could be obtained from the same par-
ties, and, at the request of the defendants, it instructed the
jury that, "even though you may believe from the evidence
that the plaintiff now has no reasonable outlet or road from
his premises, still, if you believe from the evidence that the
plaintiff could condemn a road in a different place than the
one in question, which would cause less damage than the one
in question, and be as practical as the one sought, then your
verdict should be for the defendant [defendants?]."

This instruction became the law of the case. (*Lacey* v.
[7] *Great Northern Ry. Co.*, 70 Mont. 346, 36 A. L. R. 1331,
225 Pac. 808; *Friesen* v. *Hart-Parr Co.*, 64 Mont. 373, 209 Pac.
986; *Smith* v. *Barnes*, 51 Mont. 202, Ann. Cas. 1917D, 330,
149 Pac. 963; *Harrington* v. *Butte Miner Co.*, 48 Mont. 550,

Ann. Cas. 1915D, 1257, 51 L. R. A. (n. s.) 369, 139 Pac. 451.)
[8] Interrogatory No. 2 was in harmony with this instruction, and its submission would have been eminently proper, but the request was addressed to the discretion of the court. No abuse of discretion is shown, as the jury, being fully advised as to their duties, expressly found for the plaintiff on all issues in the case, in addition to finding specifically that the road sought was a necessity, and rendered a general verdict for plaintiff. The issues joined included both questions embraced in the special interrogatory. In the absence of anything to indicate the contrary, it will be assumed on appeal that the jury observed and followed the instructions of the trial court (*Roberts* v. *Sinnott*, 55 Mont. 369, 177 Pac. 252), and that the inspection of the premises by the jury, at the request of defendants, disclosed facts "necessary to give verity to their conclusions." (*Michalsky* v. *Centennial Brewing Co.*, 48 Mont. 1, 134 Pac. 307.)

The situation here is identical with that in the *Centennial Brewing Co. Case* above, wherein this court said: "The court could very well have submitted to the jury the special interrogatory requested. * * * The submission of such interrogatories is to be commended, particularly in cases where the answers may be decisive. It has a tendency to keep the jury to the main issues and is often a great aid to this court in ascertaining the precise basis upon which the verdict is made to stand. But the submission of such questions is always within the discretion of the trial court, especially where the answer may not necessarily determine the rights of the parties; hence the refusal is not subject to correction by us. (*Poor* v. *Madison River Power Co.*, 41 Mont. 236, 108 Pac. 645.)" (See, also, *Hollingsworth* v. *Ruckman*, 72 Mont. 147, 232 Pac. 180.)

9. In arguing defendants' assignment that the court erred [9] in entering judgment in favor of plaintiff, counsel asserts that, if all other questions raised are decided against the contentions made, judgment should not have been entered in favor of plaintiff, for the reason that the "Eminent Domain" Chapter

refers back to the Political Code for the method of laying out private roads, and that, as the Political Code makes no provision therefor, either the law is defective or commissioners must be appointed to view the proposed road.

Counsel overlooks the fact, heretofore pointed out, that section 1765, Revised Codes of 1921, found in the "Political Code," instead of providing a method of procedure, refers back to the Chapter on eminent domain and authorizes the adoption of the procedure there provided in behalf of these so-called private roads. While in other matters commissioners must be appointed under the Chapter, section 15 of Article III. of the Constitution, section 1765, above, and section 9955, above, all provide that, in the case of the establishment of a "private road," those matters ordinarily determined by a commission must be determined by a jury. These provisions modify the requirements of the Chapter on eminent domain to this extent by eliminating the commissioners, just as the provisions of the above section of the Constitution modified like provisions for a determination by commissioners, found in section 1495 *et seq.*, Division 5 of the Compiled Statutes of 1887. (*State ex rel. Coleman* v. *District Court*, 14 Mont. 476, 37 Pac. 7.) The plaintiff therefore followed the procedure laid down by the legislature in condemning the road, and the court was justified by the showing made, in entering the judgment appealed from.

10. Finally defendants contend that the court erred in denying them a new trial on their presentation of affidavits containing so-called "newly discovered evidence."

The record discloses that, after the jury had deliberated for some time it returned into court for further instructions. What the jurors desired to know was the width of an old road which had been traveled at times by plaintiff and defendants, and "how much room they have to work on it." They were advised by the court that "the question is whether the road is now in condition so it can be traveled, and if not, can it be put in condition by a reasonable amount of improve-

ment," and, in effect, that in determining this question they were confined to the evidence adduced on the trial.

In support of the motion for a new trial, defendants presented the affidavit of six jurors to the effect that two-thirds of the jurors were not in favor of giving the plaintiff a new road, but to give him the old road, with slight changes, and that, had the court advised them of the width of the old road, they would have found that plaintiff could establish the old road with less damage and inconvenience to defendants than would be caused by the proposed road. By the affidavit of two outsiders it is made to appear that the old road, at the point designated by the jurors, is thirty-six feet in width. By the affidavit of defendant Francis Powers it is made to appear that the old road is fenced, and its width easily ascertainable, at least approximately, by observation, and that, as the jurors viewed the premises and walked over the old road, he did not consider it necessary on the trial to produce evidence of its width, but that, if granted a new trial, he will produce evidence to the effect that the old road is thirty-six feet wide. He further states that he had talked with "some of the jurymen," and was advised that none of the jurymen desired to give the plaintiff the proposed road, but that, after they were advised by the court that it was immaterial as to the width of the old road, and that they had nothing to do with the old road, the jury became "antagonistic, and abandoned the question as to whether the old road was sufficient," *etc.*

It is apparent from these affidavits that the only evidence which would be produced on a new trial, in addition to that already given, would be that the old road was thirty-six feet wide, and, possibly, that such an amount of land would give plenty of room for work on the old road. These facts were within the knowledge of the defendants prior to and at the time of the trial. Defendant Francis Powers could have testified to the approximate width of the old road without leaving the courtroom. The road was across his land; it was

fenced, and he had traveled it. The only reason why he did not so testify, according to his own affidavit, was that he thought the fact so apparent that testimony was not necessary. Such a showing is not one of "newly discovered evidence," but an offered excuse for not producing evidence which it was within the power of the party to produce, and does not constitute a ground for a new trial under section 9397, Revised Codes of 1921. A motion for a new trial is a statutory remedy which can only be invoked on grounds provided in the statute. This is the declaration of this court contained in a long line of authorities from *Whitbeck* v. *Montana Central Ry. Co.*, 21 Mont. 102, 52 Pac. 1098, to *State ex rel. Smith* v. *District Court*, 55 Mont. 602, 179 Pac. 831.

The excuse offered for not producing the evidence falls far short of the required showing to "negative negligence" on the part of the defendants on such a motion. (*In re Colbert's Estate*, 31 Mont. 477, 107 Am. St. Rep. 439, 3 Ann. Cas. 952, 80 Pac. 248.)

The affidavits of the jurors is an attempt to impeach their verdict on grounds other than the single ground mentioned in section 9397 above, to-wit, when the verdict is arrived at "by resort to determination of chance," and which is the only ground on which impeachment will be permitted in this state. (*State* v. *Beeskove*, 34 Mont. 41, 85 Pac. 376; *Sutton* v. *Lowry*, 39 Mont. 462, 104 Pac. 545; *Chenoweth* v. *Great Northern Ry Co.*, 50 Mont. 481, 148 Pac. 330; *State* v. *Lewis*, 52 Mont. 495, 159 Pac. 415.)

The court was justified in ignoring the affidavits filed and in denying the motion for a new trial.

No substantial error appearing in the record, the judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.

Case taken to supreme court of the United States on writ of error, July 1, 1926.